**The STATE of Ohio, Appellee,**

v.

**PRIESAND, Appellant.**

[Cite as *State v. Priesand,* 174 Ohio App.3d 689, 2008-Ohio-129.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 89370.

Decided Jan. 17, 2008.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Robert Botnick, Assistant Prosecuting Attorney, for appellee.

Kevin M. Cafferkey, for appellant.

KENNETH A. ROCCO, Judge.

{¶ 1} This case is before the court on a delayed appeal from appellant Christopher Priesand's convictions on one count of receiving stolen property and six counts of forgery, following a jury trial. Appellant contends that there was insufficient evidence to support his forgery convictions, or alternatively, that his convictions contravened the manifest weight of the evidence. We reverse in part.

### Factual and Procedural History

{¶ 2} Appellant and his co-defendant, Karen Rybka,[1] were charged in a seven-count indictment filed April 3, 2006. They were charged with one count of receiving stolen property, three counts of forgery in violation of R.C. 2913.31(A)(2), and three counts of forgery in violation of R.C. 2913.31(A)(3). A

---

1. The co-defendant's name appears variously in the record as Karen "Rybka" and Karen "Rypka." For consistency, we refer to her throughout this opinion as Karen Rybka.

jury found appellant guilty of all charges. The court sentenced him to 11 months of imprisonment on each charge, to be served concurrently with one another but consecutively to the sentence imposed in another case. In addition, the court imposed three years of postrelease control.

{¶ 3} At trial, the jury heard the testimony of the victim, Thomas O'Connor; Check Smart store manager, Mary Beth Morgan; Money Mart store manager, Kimberly Mulhall; Express Payroll Advance store manager, Jillian McCreight; and Patrolman David Packard and Detective William Lambert of the Brook Park Police Department. O'Connor testified that he had both a personal checking account and a home equity account. He kept the checkbook for his home equity account in the nightstand in his bedroom.

{¶ 4} O'Connor recalled having one guest at his home in November 2005, co-defendant Karen Rybka. She was alone in his bedroom for a time while he went to the bathroom. Later that month, he received three notices from the bank that checks written on that account had bounced. He then looked for the checkbook but could not find it, so he notified his bank that it had been stolen. He later saw copies of the checks and observed that he did not know the payee, Christopher Priesand. The checks were not written or signed in his handwriting. He completed affidavits of forgery and prepared a police report. He identified the three checks from his home equity account, each of which was made payable to Christopher R. Priesand, in the amounts of $95, $90, and $100 respectively. He confirmed that none of these checks was prepared in his handwriting or signed by him.

{¶ 5} Ms. Morgan testified that she is the store manager of Check Smart, a check-cashing business located at West 130th and Snow Road in Brook Park. Customers who wish to cash checks at Check Smart must complete a form containing basic information such as their name, address, telephone number, place of employment, and references. A photograph is also taken on the premises and is mandatory. Morgan identified the "customer information re-port" maintained in Check Smart's computer system for Chris R. Priesand and identified Check Smart's stamp on O'Connor's check number 1005.

{¶ 6} Ms. Mulhall testified that she is the store manager at Money Mart, a check-cashing business located at 13895 Brookpark Road in Brook Park. Like Check Smart, Money Mart maintains a computer file on each customer, including identifying information and references. The customer must show identification the first time they come in. Mulhall said she had seen check number 1009 on O'Connor's account, made payable to Priesand, as part of her employment, and identified a copy of that check. She also identified Money Mart's customer registration sheet containing information about Priesand, and a copy of Prie-

sand's signature and a photograph of Priesand maintained in Money Mart's records.

{¶ 7} Ms. McCreight testified that she is the store manager at Express Payroll Advance, a check-cashing business located at 6895 West 130th Street in Parma Heights, Ohio. She testified that each new customer at this business completes an application and must show a driver's license. She said that Express Payroll Advance attempts to verify the check through the maker by a telephone book listing, and to verify through the bank that funds are available. She identified the form prepared by Priesand, identified the defendant as the person who had completed that form, and identified check number 1014 on O'Connor's account, made payable to Priesand, as the check Priesand presented for payment at Express Payroll Advance.

{¶ 8} Patrolman Packard testified that he took a statement from O'Connor regarding fraudulent checks that had been written on his home equity account. Detective Lambert investigated Packard's report. He obtained copies of the three checks involved from the bank, collected information from the check-cashing businesses about the person who had cashed the check, Priesand, and then met with Priesand in person. He also spoke with O'Connor, and O'Connor identified a photograph of Karen Rybka as the woman who had been at his house. O'Connor signed a sheet designating the photo he recognized. Lambert compared this signature to the signatures on the checks and testified that they did not appear to be the same.

{¶ 9} Detective Lambert testified that he also interviewed Priesand after having given him a *Miranda* warning. Priesand signed a written waiver of his rights and gave the following written statement to the police, dated December 21, 2005:

I, Christopher R. Priesand do hereby make the following statement of my own free will and accord concerning bad check which occurred on/at Money Mart, Check Smart and Payday Express on the 22 day of Nov.

Karen wrote me a check out in O'Connor name to me to cash and I gave her the money. There were four checks she wrote to me. I cashed one a Money Mart on brookpark and one at Check Smart on Snow Rd., one at Payday Express at pearl Road in parma Hts. Also cash a check at Check Smart in Karen Rybka at Snow Rd. I gave her all the money.

/s/ Christopher R. Priesand

{¶ 10} Detective Lambert further stated that through his interview with Priesand, he learned that Priesand was present when Rybka wrote and signed the checks, and Priesand knew that Rybka was not O'Connor.

{¶ 11} At the conclusion of the state's case, appellant moved for a judgment of acquittal. The court denied the motion. The defense then rested and renewed the motion, which the court again denied.

## Law and Analysis

{¶ 12} Appellant contends that the court erred by overruling his motion for acquittal because there was insufficient evidence to support his convictions for forgery. He claims that there was no evidence that he knew the checks were stolen or forged.

{¶ 13} Appellant was charged with three counts of forgery in violation of R.C. 2913.31(A)(2) and three counts of forgery in violation of R.C. 2913.31(A)(3), which provide:

(A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:

* * * *

(2) Forge any writing so that it purports to be genuine when it actually is spurious * * *;

(3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged.

The terms "forge" and "utter" are defined by R.C. 2913.01 as follows:

(G) "Forge" means to fabricate or create, in whole or in part and by any means, any spurious writing, or to make, execute, alter, complete, reproduce, or otherwise purport to authenticate any writing, when the writing in fact is not authenticated by that conduct.

(H) "Utter" means to issue, publish, transfer, use, put or send into circulation, deliver, or display.

{¶ 14} Appellant told Detective Lambert that he saw Rybka write out the checks to him on O'Connor's account. Appellant obviously knew that Rybka (a female) was not Thomas O'Connor (a male). Thus, there was evidence that appellant knew that the checks were forged. Appellant then took the checks and presented them for payment at Check Smart, Money Mart, and Express Payroll Advance, thus transferring them. This evidence was sufficient evidence to support guilty verdicts on the charges of forgery in violation of R.C. 2913.31(A)(3).

{¶ 15} Appellant himself did not fabricate the checks, nor was there evidence from which a reasonable jury could conclude beyond a reasonable doubt that appellant aided and abetted Rybka in the commission of that offense. Appellant was merely present when Rybka wrote the checks; there is no evidence that he did anything to assist her in doing so. Cf. *State v. Jackson*

(Nov. 8, 1995), Medina App. No. 2434–M, 1995 WL 655931 (defendant properly convicted of aiding and abetting a forgery where there was evidence that he put Superglue on the forgerer's fingers so that she would not leave fingerprints on the checks). Accordingly, we find insufficient evidence to support the jury's verdict on the charges of forgery in violation of R.C. 2913.31(A)(2). The first assignment of error is therefore sustained in part.

{¶ 16} In his second assignment of error, appellant complains that his forgery convictions contravened the manifest weight of the evidence. Our ruling on appellant's first assignment of error renders the second moot to the extent that it challenges appellant's convictions for forgery in violation of R.C. 2913.31(A)(2). To the extent that it challenges his convictions for violation of R.C. 2913.31(A)(3), we disagree. Regardless of whether appellant endorsed any of the checks, there was ample evidence that he presented them for payment knowing that they had been forged. This is all that is necessary to prove the charge of forgery in violation of R.C. 2913.31(A)(3). Consequently, we overrule the second assignment of error.

{¶ 17} The common pleas court's judgment is reversed with respect to the three convictions of forgery in violation of R.C. 2913.31(A)(2). The judgment is affirmed in all other respects.

Judgment accordingly.

GALLAGHER, P.J., and CALABRESE JR., J., concur.